Oyez, oyez, oyez. The Honorable Appellate Court, 5th District, State of Illinois, is now in session. The Honorable Justice Case presiding along with Justice Welch and Justice Barbaras. The first case this morning is 5-220-177, People v. Blue. Arguing for the Appellant, David Blue, is Jennifer Bonjean. Arguing for the Appellee, State of Illinois, is Adam Rodriguez. Each side will have 10 minutes for their argument. The Appellant will also have 5 minutes for proceedings. Good morning. Good morning. Are you, counsel, ready to proceed? Yes, counsel, for the defendant appellant is prepared to proceed. All right, Mr. Rodriguez, are you ready? I am, Judge. I would just, I know it's the practice of the court to use the virtual background. It appears there's some issue. I would ask if it would be okay if I could blur my background without using the preferred set virtual background, if that's okay with the court. That would be fine. It does look like there are some problems with it. That's perfect. Thank you. Thank you, Your Honor. All right, Ms. Bonjean, you may proceed when ready. Thank you, Your Honors. Good morning. May it please the court, my name is Jennifer Bonjean and I represent the defendant appellant David Blue. David Blue is an innocent man wrongly convicted of a terrible crime. And these are strong words that are rarely uttered in appellate court arguments, but justice demands that the truth be said out loud here and now. Now, this court cannot, of course, declare Mr. Blue innocent, but it must find that the prosecution's evidence was insufficient to prove his guilt beyond a reasonable doubt. And this standard of beyond a reasonable doubt, this bedrock principle is not diluted simply because the allegation is a despicable one, one that arouses our emotions. In fact, it is with these types of allegations that it is of paramount importance that the courts are extra vigilant in ensuring that the state has met its burden to avoid miscarriages of justice like the one that occurred in the trial court below. Briefly, the undisputed facts show that David Blue, 40 years old at the time of this allegation, a highly regarded nurse anesthetist, married Lisa Blue in 2006. After experiencing fertility issues, the couple looked into fostering and eventually adopting. They did adopt NB and GB who were siblings, and that occurred in and around 2012. Now, it is undisputed that NB was a highly troubled young girl when she came to the Blues residence. She was impaired cognitively, psychologically, intellectually, and behaviorally, and had a long history of trauma that included possible sexual abuse. Now, this was borne out by her behaviors that included inappropriate sexual behaviors, and there was the thought that she had been sexually abused was so serious that DCFS provided subsidies to the Blue family, to the Blues, to address those issues. Now, the state has contended, oh, there is no real evidence of that, but that is because there was no investigation at the time, but these allegations were strong enough to provide the Blues with resources to address it. There were certainly other indicators and statements that they made by her brother and her birth mother that supported this indication. Now, even as Lisa Blue attempted to minimize some of her daughter's challenges from the admitted records showed, she did admit that, of course, NB had a very low IQ. In the 50s, she was not, quote-unquote, a concrete thinker. This is her own mother speaking. She could not sequence things that took place or put time stamps on this, and these would be very grave concerns, red flags for a child who may have had sexual abuse, who was very traumatized, and now she is unable to sequence things or put things into a concrete timetable. Again, I am focusing on her testimony. I'm putting aside all of the other evidence, but her testimony alone would have raised a reasonable doubt about NB's, and I hate to call it veracity, but whether or not, and this is not a matter of maliciousness, but whether or not it is the case that she was highly suggestible, that she was prone to confabulation, and that her testimony could be relied on to meet the state's high burden. There was no evidence in her background with DCFS that she fabricated stories, though, was there? Well, no, Your Honor. There was no evidence that she fabricated stories, but again, we do not know to what degree there were investigations into these issues of fabrication, but there was testimony and there was evidence that she had a history of lying, and again, this is not meant to be malicious, but lying is something that you would see with children that the diagnoses that she had because their behavior, they're prone to lying often because of the, if you're getting in trouble for your behavior frequently, you would be prone to lying, and this is a child who was diagnosed as being on the autistic spectrum, Asperger's, ADHD, and again, there was evidence placed into the record that her mother, even as late as September and August of 2016, said to an examiner, I am very concerned about her lying. She lies often. These are words from her mother. She does so to avoid responsibility for things she should take responsibility for. She also lies to get what she wants. Again, this type of history, which I were admitted into evidence that she had this history of lying, which should raise additional red flags. Now, I don't, I wanted to point out, and there's, the briefs are, set forth our position strongly, I think, but it's not just this background. That's just the lens by which this court or through which this court should be looking at this evidence. We have very bare bones testimony. It is uncorroborated, and it contains statements in the testimony that should give us pause about whether this story did, in fact, happen, and not only just the admission that she wasn't sure that it actually happened, but some of the factual statements that she made that are inconsistent with what we would expect, such as the statement about the semen being tasteless. These are red this child's long history of psychological impairments and behavioral impairments that should suggest to this court that this testimony was not reliable. And then, of course, we have the timing of the allegation. This is a man that had, was with this family, this child for years, by all accounts, was a good father. I mean, there was just no indicators, and he had constant contact with DCFS and other social service organizations. So, we have this incredible history, and then out of sort of nowhere, when the mother no longer has lost her fight for sole custody, there's this very contentious divorce. We see this allegation arise. So, this collection of, this collection of circumstances can lead us to no other conclusion that this just didn't rise to the level of proof beyond a reasonable doubt. But I think our briefs address that, and I want to move on to the second issue, which I think, even if this court is not prepared to vacate Mr. Blue's conviction, which we strongly urge that it do, we have a scenario where there was this catastrophic failure in the process. We have this record that kind of leads to the inescapable conclusion that there was evidence, and I don't want to call it evidence because it wasn't actually admitted into evidence, but there were materials and documents that were considered by the trier of fact here that were never admitted into evidence. And it's unclear whether those materials came by way of reports that were produced in discovery, but that were not actually admitted into evidence, or whether they were summaries that were contained in the defense expert report. Either way, rank hearsay, and not just one level of hearsay, we're talking about multiple levels of hearsay that were never subject to any cross-examination, never subject to the adversarial process. And specifically, I think, you know, if we can pinpoint the biggest problems here, we have a report by Detective Warren, which contained a statement from Lisa Blue, the mother, about what the child had said. So we have multiple levels of hearsay, and the trial court expressly stated that she relied on Detective Warren's report. And then we have a reference to the CAC interviews, which were not admitted into evidence. The prosecution certainly had the ability to admit them into evidence, did not do so, and they were never subject to a 115-10 hearing. Now, and I were, she, the trial court alleged that she had not considered these things for an improper purpose, but they cannot be reconciled with her statements when she found Mr. Blue guilty. They simply cannot. I look at the, she says, you know, a couple of things, and I think it's just worth pointing out. She says, I didn't hear testimony from anyone, but having admitted the report into evidence, there is information in Dr. Fabian's report about these CAC interviews. She also says, I have examined that interview as well, and she's referencing Detective Warren's interview with Lisa Blue. And let me be clear about this. She says, I know that Detective Warren and Lisa Blue have both given us specific dates and timelines. Quote, I have examined that interview as well, which describes the events that we heard in court from Mia. She's clearly relying on a report that contains multiple levels of hearsay. And I see that my time has expired, and I do, unless the court has any questions, I will reserve any additional argument for rebuttal. Ms. Bongean, one of the statements that the court made in finding your client guilty dealt with Dr. Fabian's report. On R-516 of the record, she says in judging the credibility of NB that, quote, she had given the same story almost two years ago to Detective Warren and CAC investigators not once, but twice. That's contained in Dr. Fabian's report, both in October of 2019 and February of 2020. My question to you is, the attorney for Mr. Blue is the one who admitted that report for the court. Are you now saying that that was an improper review by the trial court? Yes, I am, Your Honor, and this is why. The report was admitted for the purpose of establishing the data and facts on which Dr. Fabian rendered his opinion. It was not admitted so that the court could take substantive consideration of the underlying facts. That it would be improper, and it was clear that that was not the purpose for which she admitted that report. Now, I would agree that that's a dangerous proposition, and she had his testimony, so one could quarrel with the This does not allow the court to consider the underlying facts in that report. The trial court was at liberty to reject Dr. Fabian's expert opinion. She could have said, I don't find it reliable. I don't think it helps me in assessing my decision here, and I'm going to reject it. What she was not permitted to do is then look through the case summaries. Again, now we're at a fourth level of hearsay. She's looking at a summary of Dr. Fabian about what was in a report by a detective that was stated by a mother about what was said to mother by a child. Now, we have so many levels of hearsay that we're never subject to any cross examination on those particular statements, and as well as the CAC interview. In fact, even the prosecution has admitted in their briefs, and this was the first I had learned of it, that there weren't even two CAC interviews. That's how dangerous this all is. There was apparently only one CAC interview, and now we have a judge relying on a statement in an expert report about two CAC interviews, which apparently is not actually accurate at all. There was never two CAC interviews, and this is just what I've read from the prosecution in their briefs. No, I don't believe that the trial court was at liberty to rely on this information substantively. Now, if the court disagrees, then I think we do get to a place of ineffective assistance of counsel because there could be no sound trial strategy for admitting in an expert report with all of this hearsay evidence that you have not challenged in any hearings, that have not been subject to any adversarial process. There would have been plenty to say about that, so it was not sound trial strategy if the court is inclined to go there. Okay, let me stop you there. The trial judge in the order entered February 18, 2022, on the motion for a new trial, kind of walked back her findings and said, the court did not consider the documents relied upon Dr. Fabian to be substantive evidence of guilt. What do you say about that? Again, she did walk back her findings, and again, I'm in the unenviable position of having to sort of figure out what was going on there. I know that I did ask her point blank during the oral arguments if she would clarify the record right there and then. She declined to do so. Then she walked back her statements that she relied on it for otherwise. Again, of course, she's entitled to deference, but we have this inconsistency, this contradiction that cannot be resolved here, where the court is clearly in her findings, which I think the court has to defer to her actual findings when she found Mr. Blue guilty. You can see that she's relying on this material repeatedly for substantive purposes, even to say that a statement is consistent or it's the same statement. That's kind of what she says. I find her testimony credible because it's the same as what she told people on other occasions. That is by its very nature substantive consideration to say it is the same because you have to make a conclusion that, yes, it's the same, it was said, and it's consistent now. I just don't think that the efforts later on to suggest that it wasn't used for substantive purposes can be credited in light of her prior findings. Yes. Let me stop you there. You will have a few minutes for rebuttal. Mr. Rodriguez, if you get cut short because of the extra time that Ms. Bongina has had, we'll afford you a little extra time as well should you need it. Mr. Rodriguez, are you ready for the state? I am, Your Honor. Go ahead. Good morning, Your Honors, and may it please the court. In this case, the evidence established the defendant's guilt for predatory criminal sexual assault of a child and aggravated criminal sexual abuse beyond a reasonable doubt. Before addressing my substantive argument, I did want to respond to a couple of questions that the court asked my friend on the other side because I think they warrant some clarification. Justice Cates, you asked counsel a question regarding the history of lying and references to lying that were related to NB. That discussion or the references to lying were not specific instances in the record. As defendant's own expert witness admitted, there was just a broad stroke reference that NB had lied in the past, but when on cross-examination he was questioned about that, it was admitted that it was involving stealing candy at school. So the representation that NB was an incredible because there was a history of lying in her background isn't an appropriate representation. We need to distill down to the source of that information, which was merely a lie. I saw that in the brief with regard to your response to that. So there's nothing else in the brief concerning or in the record before us concerning her having continued issues with lying? No, your honor. There's no other specific reference to lying or anything like that in the record. I think the trial court obviously identified that she testified credibly and consistently, but in regards to historical reference or additional references to lying in the record, I don't believe that's correct to say that there's a history or pattern of it. I did want to respond to the discussion regarding reference to tastelessness of semen, and somehow that's indicative or relative to NB's credibility. In Dr. Fabian's expert report, he references the fact that NB stated that the semen tasted bad, and when she used mouthwash to subsequently wash out her mouth, the logical inference would be that it tasted bad. If the defendant's confused on that point, they need to look at their expert's report to clarify that. Well, that in and of itself raises an inconsistency in her testimony. Wouldn't you agree with that? No, your honor. I wouldn't agree. NB testified that after the defendant ejaculated into her mouth, she was forced to swallow it, and then she went to bed. I don't think there's any inconsistency to say that there's a later reference that the expert witness identified in which NB stated that it tasted bad and that she used her mouthwash. I don't think that question was asked of her, and I think discussion of taste is such a relevant and doesn't really prove anything at all, so I don't think there's any real strength to that argument. I thought that her description of it was that it was like batter. She did testify that it was like batter, your honor. In regards to that specific reference, the use of the word batter was derived from the defendant using that. At 243 of the record, the defendant testified that, excuse me, NB testified that the defendant used the word to describe his semen to her, so it's not as if this reference came out of nowhere or that she fabricated it. It's actually coming directly from the defendant, and the subsequent statements on NB's testimony regarding the defendant's penis being hard, the use of the word batter, the defendant moving his hand on his private, that's all consistent age-appropriate language, which this court has previously said is an indication of reliability because what child would be able to describe sex acts in such sort of adult graphic detail, the language that NB used was consistent with a child victim because it's generally understood to be something they had no context of, no relation to, and so therefore they have to use words in the limited language that children have, so I think that actually speaks contrary to the defendant's point regarding NB's credibility. I did also want to respond to... And I'm not sure that Justice Cates' question was completely answered. You're suggesting that NB had indicated somewhere in the record that she used mouthwash, and you're suggesting that indicated that there was a bad taste. I know that on page 16 of the appellant's brief, she points out that the batter was tasteless, and I think that's what Justice Cates was asking, isn't that inconsistent if she testified that it was tasteless, and then you're suggesting she also implied that it wasn't tasteless if she used mouthwash. The reference in Dr. Fabian's report, in reference to the fact that the victim used mouthwash, I'm saying that the logical inference of that would be that it was bad. I don't necessarily think the issue of taste is outcome-determinative to this, Your Honor, and I think it's... I don't either, but I just wanted to clarify the consistency of those statements. Absolutely. Addressing my substantive argument, defendant argues for this court to both reject the specific credibility and factual findings of the trial court, and to apply an erroneous standard of review, essentially viewing the evidence in the light most favorable to the defendant. Such an argument flies in the face of the well-established standard for assessing the credibility, or excuse me, the sufficiency of the evidence in the light most favorable to the prosecution. As this court is well aware, assessing the credibility of witnesses is the exclusive purview of the trial court, yet defendant blatantly attempts to have this court reassess Enby's credibility, where the defendant argues that Enby's history and intellectual and developmental issues were such that this court must consider them inherently unreliable. However, the fact that Enby had developmental issues or a traumatic background does not mean that the trial court needed to presume her testimony incredible. It merely needed to assess her credibility under the well-understood standard that trial courts exercise every day. So it's such that Enby's credible testimony was sufficient to convict defendant. As the court stated at 516 of the record, it found Enby, quote, extremely credible. Enby credibly testified that she knew the difference between truth and a lie. That was corroborated by her mother's testimony at 159 in the record, at 207 and 221 of the record. It's the references regarding Enby acknowledging that she understood the difference between truth and lie. The trial court found that even though Enby appeared scared while testifying, her testimony was extremely credible given the nature and extent of what she was going through, and that she consistently referenced the same story. I know the court discussed that previously. The reference to the story was oral penetration. That's never changed. That's what the court recognized. There was a reference to oral penetration that Enby testified on direct testimony. That reference was identified in Dr. Fabian's expert report. There's never been any other act that's ever been referenced in the record regarding the sexual conduct related to this case. That's the issue of consistency, not that the court looked at substantive statements and drew substantive references from that. Mr. Rodriguez, that's the question that I asked Ms. Bonjean. The fact that when the court finds the defendant guilty, she says that the child had the same story almost two years ago to Detective Warren and CAC investigators not once but twice, that's actually what you're arguing. The court looked at this child's testimony and then compared it to these reports that they say were inadmissible. From that, found the defendant guilty so that there was a use of this testimony to corroborate the court's own thinking as to what was going on. I don't think that's correct, Your Honor. In regards to the reference of there being multiple CAC interviews, the state identifies in their brief that that's just an oversight in regards to how Dr. Fabian was looking at records and his recitation of the facts when he was doing a report analysis or a summary of each report that he reviewed. He referenced the one of the DCFS record reports which occurred following the CAC interview referenced or had a different date on February 5th of 2020. Dr. Fabian then referenced that date as opposed to the date of the actual CAC interview. Just so it's completely clear for the record of the court, there's never been multiple CAC interviews. There was only ever one CAC interview that occurred. And so the court's confusion out to that point of reference there being two, I think is merely an issue derived from the trial experts incorrect summary of the facts or the summary of the background information. Doesn't that show that she's actually looking at those reports that were referenced by the expert? Well, Your Honor, the trial court did indicate that it reasoning process of Dr. Fabian and to understand the basis for his opinion. Those are absolutely proper things for trial courts to review. As the appellate court has said in People v. Thiel, when there's issues regarding consistency or the analytical framework underlying an expert's opinion, a reviewing court needs to look at that and understand that trial courts can review those facts so that they critically analyze the basis underlying an expert's opinion. And that's merely what the trial court was doing in this case. They didn't consider the report substantively. They considered it as it stated on the record, both in its written ruling and later on, that it considered that for credibility and to understand the basis underlying Dr. Fabian's opinion. And as the court stated and prior to ruling, it considered those facts because they were based on evidence. As Dr. Fabian testified at 415 and 16 of the record, one of the sources of information that he relied on quite heavily was an allegation of parasexual abuse involving NB that came from her teenage brother. And that was based on his review of the records, which the doctor testified to. Yet he also admitted on cross that the brother was never actually saw NB sexually abused, that the brother had no specific training or information from which to draw that, and that brother was not independently evaluated. Therefore, Dr. Fabian, or yet Dr. Fabian still testified that he considered that information when forming his opinion. And I think that testimony is evidence of the lack of critical thought in Dr. Fabian's analysis. Therefore, that's something the trial court could have absolutely considered when assessing his credibility. And while the court did testify or did state that it found some of it helpful, it ultimately was analyzing this issue regarding differences in the record and conflicts within the record. And so it engaged in the actually appropriate act of reconciling those differences in favor of NB's credible live testimony. So I don't think that issue regarding sort of sources of information and how the court analyzes it substantively when you look at what the court actually said are correct. I do see that my time is up. I did want to just briefly address some of the other issues regarding defendant's abuse of discretion. I'll give you just a few minutes or seconds. Yes, Your Honor. In regards to the defendant's argument regarding an abuse of discretion in the trial court considering the records, the defendants both forfeited and invited the error that he now complains of on appeal in that he sought admission of those records both in pre-trial litigation as well as at trial when he asked the trial court to consider the records that Dr. Fabian used in forming his as I argued previously, there was no second CAC interview. So the court didn't look at a second CAC interview. It also never had any record of the CAC interview at all. The only one that was ever there. There's also no reference in the record to the trial court having any report from Dr. Fabian. So it couldn't have reviewed or considered substantively or otherwise records that weren't in its possession and records that don't exist. So the defendants- Wait, are you saying the court did not have Dr. Fabian's report? No, the court had Dr. Fabian's report. The argument is that- defendant's argument is that the court considered Detective Warren's report and a second CAC interview. As I argued, there was never a second CAC interview and the court never had Detective Warren's report. It did have Dr. Fabian's report which defendant affirmatively requested admission of. So invited error were applying that and furthermore substantively, the trial court didn't abuse its discretion because it reviewed that report not for the truth of the matter asserted for substantive evidence but merely to understand the reasoning and the basis underlying Dr. Fabian's opinion which as I argued previously, something the trial court's actually allowed to do. And finally, very briefly regarding defendant's argument of ineffective assistance of counsel, trial counsel's decision was always to use or excuse me to admit Dr. Fabian's to collaterally attack the credibility of MB. The fact that such a strategy failed is not evidence of deficient performance nor has defendant satisfied the prejudice problem under Strickland because the only argument the defendant presents regarding prejudice is unfounded possibilities that the court may have considered references to details regarding the defendant's divorce with Ms. Blue. The trial court never made any explicit reference to divorce and the only court summarizing its ruling and referencing Ms. Blue's testimony, it just nearly generally recognized the contentious nature of divorces. Therefore, your honors, for the reasons that we argued in our brief as well as today, we ask you to confirm the defendant's conviction and sentence. Thank you very much. Thank you, Mr. Rodriguez. Ms. Bongean, rebuttal? You're on mute. My apologies. I think we just have a, frankly, a very clear display of precisely what the trial court did that was improper. Even the prosecution is now relying substantively on the contents of Dr. Fabian's report in this appellate court to suggest that MB's testimony was credible. The prosecution refers to statements that apparently Dr. Fabian obtained from, I don't know if it was a CAC interview. I don't know if it was Detective Warren's report. We, frankly, don't even know where it came from about this mouthwash incident. I think this is a very nice example of how the prosecution and the trial court was relying substantively on the contents of Dr. Fabian's report to bolster and to conclude that MB's testimony was, in fact, reliable. The problem with that is that certainly we can imagine, as critical as I have been of trial court was going to be using Dr. Fabian's report for substantive purposes, she would have done something to point out these inconsistencies. The one that Justice Cates brought to our attention that, well, isn't that an inconsistency? Yes, that's an inconsistency. That's why we have 115-10 hearings. That's why we have cross-examination. That all should have been and would have been done if defense counsel understood. I don't think it was her obligation to understand this because at the end of the day, the trial court was permitted to either reject or accept Dr. Fabian's testimony that there were these red flags that suggested a possible false allegation. She was not permitted to just reject it, although she didn't even really reject his testimony. I'm going to go into the bases, the summaries, and say, but I'm going to use it to make these other conclusions about the credibility of MB. I think we see in real time what the problems were with considering Dr. Fabian's report for substantive purposes and the fact that she even regurgitated that there was this second CAC interview when, in fact, there was no second CAC interview. That was not proper. There was no waiver. The defense attorney did not expect this court to consider Dr. Fabian's background information about how he arrived at his decision for substantive purposes, nor would we expect a trial court to do that. This was not a forfeiture or a waiver situation. I wanted to just point out that this lying issue is not just a matter of stealing candy once. In one of the exhibits that was admitted, and I will point the court to Exhibit I at 326, this was a behavioral health child and adolescent survey that was completed by Lisa Blue in August of 2000, and I believe 2016. We're talking less than six months prior to their separation. She reports, and I have it in my brief, that the behavioral problems of lying continue and that she lies often to get things or to avoid responsibilities, and that one of the treatment goals was to address the lying. Now, it is true that those records are not specific in what type of lying or the extent of the lying, but it was still a concern of the mothers even as late as August of 2016. I think it's not quite accurate that there was just this one incident of stealing candy. That is not true. The mother is continuing to seek resources and help, and MB is getting treatment for dealing with her propensity for lying. The issue about the marriage, that's not entirely true. Dr. Michael Blue, who is David Blue's brother, did testify about the problems with the marriage and how it deteriorated and that the divorce was contentious, so there was evidence in the record. We are not suggesting that there's something inherently untrustworthy because someone has been through trauma or because this child has all of these behavioral and cognitive issues, but again, we cannot ignore the challenges of this young woman in determining whether or not the evidence was sufficient to prove Mr. Blue guilty beyond a reasonable doubt, and it's our position that the state did not. One last question for you, Ms. Bongean, and that is this. Your client chose a bench trial in this case. Illinois law presumes that the court only considered admissible evidence, and we have to give, as an appellate court, great deference to the trial court's findings of credibility. How do you suppose we handle that in this case? Yes, Judge. Yes, of course, but that is just a presumption, and it is a rebuttable presumption, and her findings, the trial court cannot escape her own words here, and it is clear there is no way to read her findings. There is no way to read her findings without concluding that she did not actually consider evidence in an appropriate way. She considered it for a hearsay purpose, a substantive purpose, and to hold otherwise would be to just ignore the plain meaning of words, and it wasn't just like one misstatement. I mean, her findings are replete with suggestions and express statements that she considered materials for substantive purposes that she should not have, and that's why she found Mr. Blue guilty. So what this court must do is recognize that, yes, of course, there's deference given to the trier of fact. She is presumed to follow the law, but that is a rebuttable presumption that was rebutted by her own words, and at the end of the day, we have someone who has been convicted based on evidence that was not subjected to any adversarial process, meaning these embedded hearsay statements that have never been challenged, and this would have been an entirely different trial if there had been a cross-examination about those embedded hearsay statements that the court relied on without the benefit of any cross-examination. So it is our position that the presumption has been rebutted. Frankly, again, we believe that results in an outright vacator of his conviction, but at a minimum, we must have a record that reflects due process, and this record does not. Okay. Thank you very much. Thank you both for your arguments today. This matter will be taken under advisement. We'll issue an order in due course.